UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMINA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-22-CV-796-HJB |
| | § | |
| FEDERAL INFORMATION SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are the motions for summary judgment filed by Plaintiff Amina Johnson and Defendant Federal Information Systems, Inc. ("FIS"). (Docket Entries 70 and 71). For the reasons below, Johnson's motion is **DENIED** and FIS's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    Jurisdiction.**

Johnson claims she was retaliated against, in violation of Title VII of the Civil Rights Act of 1964. (Docket Entry 1-1, at 2.) *See* 42 U.S.C. § 2000e-3(a). The Court has original jurisdiction over this claim pursuant to 28 U.S.C. § 1331. The undersigned has authority to rule on these motions by consent of the parties pursuant to 28 U.S.C. § 636(c). (*See* Docket Enty 33.)

**II.    Background.**

Johnson is a former employee of FIS, who began working for the company in January 2021. (Docket Entry 71-1, at 3.) When it hired Johnson, FIS was already about two years into a multi-year project assisting Federal IT Consulting ("FEDITC") with the development of software under a federal contract. (*Id.*) FIS hired Johnson as "a .Net Developer"; she was "responsible for implementing regression testing for the software developed by FEDITC." (*Id.*)

Johnson joined 36 other FIS employees on the FEDITC project. (Docket Entry 71-2, at 2.) These employes were divided into smaller, development teams. (*Id.* at 3.) The direct supervisor for Johnson's team was Alex Bartonek (*Id.*) Bartonek reported directly to Adrian Flores, the Program Manager, who in turn reported to Robert McKay, FIS's Director of Operations and Human Resources Manager. (*Id.* at 1–3; Docket Entry 71-2, at 3–5.) McKay answered to Mike Bullard, Vice President of Information Systems for FEDITC. (*See* Docket Entry 71-1, at 3–4.)

Johnson's development team held daily virtual meetings to discuss progress on the project. (Docket Entry 71-2 at 3.) At one of those meetings, on March 30, 2021, Johnson reported that some of her automated regression tests were malfunctioning because of recent software updates. (*Id.*) Johnson proposed reverting to the prior software. (*Id.*) Instead, Johnson was instructed to update her tests to accommodate the software changes. (*Id.*) Johnson told Bartonek she felt she was not being heard because she is a woman. (*Id.*) Bartonek reported this comment to Flores, who instructed Bartonek to include him in all subsequent team meetings. (*Id.*)

At a meeting on April 1, 2021, "Johnson and the developers were trying to determine why approximately 600 of her automated tests were not working." (*Id.*) Johnson again argued that "the software should be changed, not the tests." (*Id.*) After the meeting, Flores met with Charles Criswell, the Master Developer for the project, to discuss possible solutions. (*Id.* at 4.) They agreed that "the only feasible solution" was for Johnson to update her tests, rather than require the developers to change the software. (*Id.*) When Flores and Bartonek contacted Johnson to tell her this, she reported that she already made the necessary updates to repair the 600 broken tests. (*Id.*)

On April 6, 2021, Flores emailed Bullard regarding Johnson's work-performance problems. (Docket Entry 70, at 25.) In the email, Flores described the April 1, 2021, meeting, where Johnson blamed Criswell for the 600 broken tests and advocated for software changes

2

instead of updates to her tests. (*Id.*) Flores explained that the tests could be updated with minimal effort, and that "the meeting probably took way longer than the fix itself." (*Id.*) Flores then described a subsequent meeting, where Johnson "spent about another half hour . . . demonstrat[ing] 3 issues that she was pointing at the dev[elopement] team for and in all 3 cases she was wrong." (*Id.*) Flores made no mention of Johnson's comment to Bartonek about disparate treatment.

The next day, Bullard emailed McKay and directed him to terminate Johnson's employment, explaining that she was "not meeting our expectations for her position." (*Id.* at 28.) In a follow-up email to McKay, Bullard further instructed that "FIS will not be required to provide a replacement" for Johnson because there was no longer any "requirement for a Software Developer/Automated Tester on the FTDTL project." (Docket Entry 71-1, at 7.)

On April 7, 2021, McKay and Flores jointly called Johnson and informed her that her position at FIS was terminated. (Docket Entries 71-1, at 3; 71-2, at 4.) Johnson accused McKay and Flores of retaliating against her for being a black woman. (Docket Entry 71-1, at 3; 71-2, at 4–5.) Johnson then asked about the status of disparate treatment—referring to her comment to Bartonek at the March 30, 2021, meeting. (Docket Entry 71-2, at 5.) Flores responded that he observed daily meetings and talked to other team members and determined that her comment was without merit. (*Id.*) Johnson followed up by asking whether her comment was reported to Human Resources—*i.e.*, McKay. (*Id.*) Flores explained that he did not report it to McKay because his own investigation convinced him that any concerns of disparate treatment were meritless. (*Id.*)

McKay contends that he first learned of Johnson's comment during the April 7, 2021, phone conversation terminating Johnson's employment—though Johnson disputes this. (Docket Entry 71-1, at 3.) Later that day, Johnson sent McKay the following email:

3

> Please assist on my next steps for Retaliation.
>
> I am [a] Black Female that voiced [1] that I was being treated differently by a Developer (Charles C Criswell) to . . . Bartonek and [2] [that] my voice was not being heard to . . . Bartonek and . . . Flores.
>
> Today, . . . Flores informed me that he did not report it to HR because he did his due Diligence and instead my contract was ending effective today @1600.
>
> Resolution: I am seeking my voice to be heard, these allegations investigated and the persons involved be held Accountable.

(*Id.* at 18.) FIS's legal counsel responded by sending Johnson a request that she submit a written complaint specifically detailing her allegations. (*Id.* at 15.) Johnson did not respond, nor did she file the requested complaint. (*Id.* at 4.)

On July 17, 2021, Johnson filed a Charge of Discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"), alleging racial and sexual discrimination as well as retaliation. (Docket Entry 7-2, at 2.) The EEOC ultimately decided not to move forward with the claims and notified Johnson of her right to sue on December 15, 2021. (Docket Entry 7-3, at 2.) Johnson filed suit in 407th District Court, Bexar County, Texas, alleging discrimination and retaliation in violation of Title VII. (Docket Entry 1-1, at 2.) The case was removed to this Court (Docket Entry 1), and the Court subsequently dismissed Johnson's discrimination claim. (Docket Entry 18, at 14–16.) Accordingly, Johnson's retaliation claim is all that remains in this case.

Both parties have moved for summary judgment on Johnson's retaliation claim and have responded to each other's respective motions. (*See* Docket Entries 70–74.) FIS also seeks an award of attorney's fees. (Docket Entry 71, at 9.)

### III.     Summary Judgment.

#### A.     *Applicable Legal Standards.*

##### 1.     *Summary judgment.*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. United States Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 447 U.S. at 248).  "When parties file cross-motions for summary judgment," the Court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019) (citation omitted).

The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party carries its burden, "the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 851 (N.D. Tex. 2009) (citing *Celotex Corp.*, 477 U.S. at 323–24).  "The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence." *Arthur v. Liberty Mut. Pers. Ins. Co.*, No. SA-21-CV-00602-FB, 2022 WL 17824520, at *1 (W.D. Tex. Dec. 20, 2022) (citing *Topalian v.*

*Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)), *report and recommendation adopted*, No. SA-21-CA-602-FB, 2023 WL 2557392 (W.D. Tex. Feb. 3, 2023).

In ruling on motions for summary judgment, the Court is required to consider only the party's cited materials. FED. R. CIV. P. 56(c)(3); *see Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence . . . .") (citation omitted). Even when evidence supporting a party's position is in the summary judgment record, if the party fails to cite or refer to it, "that evidence is not properly before the district court." *Jones v. Houston Indep. Sch. Dist. Bd. of Trustees*, 986 F. Supp. 2d 812, 819 (S.D. Tex. 2013), *aff'd*, 575 F. App'x 282 (5th Cir. 2014).

  2.  *Retaliation under Title VII.*

Title VII prevents retaliation by "forbid[ding] employer actions that discriminate against an employee . . . because [s]he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 455 (5th Cir. 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). "'Where, as here, the plaintiff[ ] seek[s] to prove causation by circumstantial evidence, [she] carr[ies] the initial burden of establishing a prima facie case of retaliation,' and the retaliation claim is analyzed under a *McDonnell Douglas* burden-shifting framework." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (citations omitted) (alterations in original).

To establish a prima facie case of retaliation, an employee must show "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1000 (citation and internal quotation marks omitted). "If the plaintiff establishes a prima facie

6

case, then the employer has the burden of production to provide a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citation and internal quotation marks omitted). "If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* Notwithstanding the shifting burdens of production, "the burden of persuasion remains with the employee throughout." *Id.*

Once a Title VII retaliation case reaches the pretext stage, a plaintiff can survive summary judgment only if she can "show a conflict in substantial evidence" as to whether the defendant would not have taken the adverse employment action "but for the protected activity." *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (citation and internal quotation marks omitted); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (same). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Brown*, 969 F.3d at 577 (citation omitted).

"A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Id.* (citation omitted). In some cases, "a factfinder may infer the ultimate fact of retaliation from the falsity of the [employer's] explanation." *Id.* at 577–78 (citation omitted). In others, a plaintiff may have "both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet no rational factfinder could conclude that the action was discriminatory." *Id.* at 577 (citation omitted). Ultimately, in deciding whether to grant summary judgment, the Court considers "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is

false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 578 (citation and internal quotation marks omitted).

**B.      Analysis.**

1.   *Plaintiff's prima facie case.*

FIS contends that Johnson has failed to present even a prima face case of retaliation. (Docket Entry 71, at 1, 4–8.)  It argues that Johnson did not engage in protected activity and, even if she had, there is no evidence of a causal connection between that activity and her termination. (*Id.* at 4–8.)  The Court disagrees.

i.         Protected activity.

As the Court previously explained (*see* Docket Entry 18, at 14), the retaliation provisions of Title VII "protect[] not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Johnson v. Fed. Info. Sys., Inc.*, No. SA-22-CV-00796-XR, 2022 WL 4298458, at *8 (W.D. Tex. Sept. 16, 2022) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).  Johnson made a comment to Bartonek, her direct supervisor, that she felt she was being disregarded because she is a woman.  (Docket Entry 71-2 at 3.)  Construing the evidence in Johnson's favor, her statement qualifies as an informal protest sufficient to qualify as protected activity at the prima facie stage.  *See Johnson*, 2022 WL 4298458, at *8 (holding informal comment to supervisor about disparate treatment was protected activity in denying motion to dismiss retaliation claim).

ii.        Causal connection.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation."  *Brown*, 969 F.3d at 577 (citation omitted).  "However, the but-for standard does not apply at the prima facie case stage."  *Id.*  Instead, a plaintiff may satisfy her burden by showing

8

close enough timing between her protected activity and the adverse employment action she suffered. *Id.* To do so, however, "[t]he protected act and the adverse employment action must be very close in time." *Id.* at 578 (noting that temporal proximity of up to two-and-a-half months is sufficiently close to prove causation element of prima face case of retaliation).

The record here demonstrates that Johnson was fired a mere eight days after she told Bartonek that she felt she was not being heard because she is a woman. (Docket Entries 71-1, at 3; 71-2, at 3–4.) Termination less than a fortnight after an employee engages in protected activity is certainly close enough in time to satisfy the causation element at the prima facie stage. *See Brown*, 969 F.3d at 578.

### 2. *Legitimate, non-retaliatory rationale.*

Because Johnson has made a prima facie case of retaliation, the burden shifts to FIS to proffer a legitimate, non-retaliatory rationale for terminating her employment. The burden at this stage is one of production, not persuasion. *Saketkoo*, 31 F.4th at 1000. FIS argues that the real reasons it fired Johnson were because (1) she was not meeting work expectations and (2) her position was no longer needed. (Docket Entry 71, at 8–9.) The record supports these proffered bases for action.

On April 6, 2021, Flores emailed Bullard to describe an incident in which Johnson "made a mountain out of a mole hill." (Docket Entry 70, at 25.) Flores explained that Johnson "had the whole dev[elopement] team sit around and listen to her as she told us that 600 tests were broken by a change that Chuck [Criswell] made." (*Id.*) Flores noted that "the level of effort to fix this was minimal . . . and literally the meeting probably took way longer than the fix itself." (*Id.*) Flores also recounted that, during a subsequent meeting, Johnson "spent about another half

9

hour . . . demonstrat[ing] 3 issues that she was pointing at the dev[elopement] team for and in all 3 cases she was wrong." (*Id.*)

On April 7, 2021, Bullard emailed McKay to explain that Johnson "is not meeting our expectations for her position," and request, on behalf of FEDITC, that FIS "remove Ms. Johnson from the FTDTL project." (*Id.* at 28.) The following day, on April 8, 2021, Bullard sent a follow-up email to McKay, instructing him that "FIS will not be required to provide a replacement" for Johnson because there was no longer any "requirement for a Software Developer/Automated Tester on the FTDTL project." (Docket Entry 71-1, at 7.)

       3.  *Pretext.*

Turning to the issue of pretext, the Court finds that the record in this case cannot support a reasonable inference that FIS's proffered rationale for terminating Johnson's employment was pretextual. Pretext cannot be shown because there is no evidence that McKay, who ordered the adverse action, had any knowledge of Johnson's protected activity.

In his declaration, McKay swears and affirms that he had no knowledge of Johnson's comment to Bartonek until she brought it up during the April 7, 2021, phone call, after he informed her that her employment was being terminated. (Docket Entry 71-1, at 3.) Flores corroborates McKay's ignorance of any protected activity in his own declaration. (*See* Docket Entry 71-2.) Instead, after Bartonek reported Johnson's comment about not being heard, Flores personally investigated the situation by sitting in on subsequent meetings and talking to other members of the development team individually. (*Id.* at 3–5.) Flores found no evidence of disparate treatment—only evidence that Johnson was not meeting her job expectations. (*See id.* at 3–4.) Flores addressed Johnson's work-performance problems in an email to Bullard, but never mentioned any comment or concerns from Johnson about disparate treatment. (Docket Entry 70, at 25.) Bullard

then emailed McKay, directing him to terminate Johnson's employment, citing only that she was "not meeting our expectations for her position." (*Id.* at 28.)

Johnson has produced no evidence to suggest that the real reason FIS fired her was to retaliate against her for making a comment to Bartonek that she was not being heard because of her gender. Instead, Johnson cites to the email that Flores sent Bullard, on April 6, 2021, recounting with specificity the ways in which Johnson's job performance was not meeting expectations. (Docket Entry 72, at 3–4 (citing Docket Entry 70, at 25).) Johnson contends that the Court can infer from this email that Flores told Bullard about Johnson's comment regarding disparate treatment and, thus, that Bullard's stated reason for directing McKay to terminate her employment was pretextual. (Docket Entry 72, at 4.) The Court disagrees. An email describing objective indicia of poor job performance simply fails to demonstrate the requisite "conflict in substantial evidence" from which "reasonable and fair-minded men in the exercise of impartial judgment" could disagree as to whether FIS would have terminated Johnson's employment "but for the protected activity." *See Brown*, 969 F.3d at 577. Johnson's contrary view is based on no more than speculation, which is "insufficient to defeat a motion for summary judgment." *Hernandez v. Clearwater Transp., Ltd.*, 550 F. Supp. 3d 405, 411–12 (W.D. Tex. 2021) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

In short, FIS proffered a legitimate, non-retaliatory rationale for terminating Johnson's employment, supported by the summary judgment record. (*See* Docket Entries 70, at 25, 28; 71-1, at 3–4, 8; 71-2, at 3–5.) Absent substantial evidence from Johnson showing that she would not have been fired but for her passing comment about disparate treatment to Bartonek on March 30,

2021, FIS is entitled to summary judgment. Johnson has failed to produce such evidence; accordingly, FIS is entitled to summary judgment.[1]

## IV. Attorney's Fees.

"An award of attorney's fees is entrusted to the sound discretion of the trial court." *Tex. Com. Bank Nat. Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). In Title VII cases, "a prevailing defendant may only be awarded . . . [attorney's] fees where the court finds that the plaintiff's claim was frivolous, unreasonable, groundless, or without foundation. . . ." *Abraham v. Sw. Bell Yellow Pages, Inc.*, 3 F.3d 438, at *5 (5th Cir. 1993) (citing 42 U.S.C. § 2000e-5(k) and *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (emphasis omitted). "Bearing in mind that attorneys' fees are awarded to a prevailing defendant in a Title VII action only in extreme cases," *Abraham*, 3 F.3d 438, at *5, the Court denies FIS's request for attorney's fees here.

A comparison of *Abraham* with this case reveals why FIS's request for attorney's fees must be denied. In that case, Abraham's employer placed him on workplace probation after he scored dead last amongst his 32 co-workers in a performance review. *Id.* at *1. He complained to the EEOC that he was placed on probation "because of his national origin ("Anglo") and because of his age." *Id.* However, employees outside of his claimed protected classes were also placed on probation. *Id.* And 13 of the 27 employees who were not placed on probation were members of

---

[1] The Court notes that Defendant lodges several objections against the materials Plaintiff attached as evidence to her motion. (*See* Docket Entry 73, at 5.) Defendant complains, *inter alia*, that Plaintiff's attached materials are not authenticated. (*Id.*) Cited materials "need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Instead, they "need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). In any event, the objections are moot; even considering the materials, the Court finds that Defendant is entitled to summary judgment.

his claimed protected classes. *Id.* Abraham and one other employee—who was also not a member of his claimed protected classes—eventually were fired for failing to "achieve an objective or group average in sales" during their probationary periods. *Id.* No one was hired to replace Abraham after he was fired. *Id.* at *3. Abraham amended his EEOC complaint to include retaliation and eventually filed suit on these claims. *Id.* at *1. The employer moved for summary judgment and attorney's fees, both of which the district court granted. *Id.* at *2.

Abraham failed to present even a prima facie case of discrimination, as he could produce no evidence that he "was replaced by someone outside the protected class or someone younger. . . ." *Id.* Nevertheless, the Fifth Circuit reversed the district court, concluding that awarding attorney's fees was an abuse of discretion. *Id.* at *5 ("While Abraham did not present sufficient evidence to survive summary judgment, we cannot say that all of his claims were frivolous, groundless, or without foundation.").

In this case, although Johnson has failed to withstand summary judgment, she at least presented a prima facie case of retaliation. Thus, the Court cannot say that her retaliation claim is frivolous, groundless, or without foundation. The Court therefore finds that an award of attorney's fees to FIS would be an abuse of discretion.

V.     **Conclusion.**

For the foregoing reasons, Johnson's Motion for Final Summary Judgment (Docket Entry 70) is **DENIED** and FIS's Motion for Summary Judgment (Docket Entry 71) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** FIS's summary judgment motion on Johnson's retaliation claim but **DENIES** the request for attorney's fees. As Johnson's retaliation claim was the only claim remaining in this case, her complaint is hereby **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** on January 26, 2024.

_____
Henry J. Bemporad
United States Magistrate Judge

14